**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SHERRI CAIN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Case No. 1:16-cv-04836 |
| vs. | ) | |
| | ) | Judge Bucklo |
| OCWEN LOAN SERVICING, LLC | ) | |
| | ) | |
| Defendant. | ) | |

**OCWEN'S MOTION FOR SANCTIONS AGAINST PLAINTIFF'S COUNSEL
FOR VIOLATING AGREED CONFIDENTIALITY ORDER**

Defendant, Ocwen Loan Servicing, LLC ("Ocwen"), hereby moves under Federal Rule of Civil Procedure 37(b), as well as the Court's inherent authority, for sanctions against Plaintiff's counsel Ahmad T. Sulaiman (6279456), Majdi Y. Hijazin (6284879), Mohammed O. Badwan (6299011), Daniel J. McGarry (6309647), and Nicholas Heath Wooten (N.D. Ill. Bar No. woo084) following their use of designated confidential materials in violation of the Agreed Confidentiality Order (Dkt. 17) entered in this case.

**INTRODUCTION**

This matter is back before the Court because Plaintiff's counsel violated the stipulated protective order that remains in force even though the case was settled and dismissed last September. Plaintiff's counsel violated the protective order by using a document that was produced and designated as confidential in this case to support the claims of one of their other clients in a separate and unrelated action. Counsel's conduct crossed the line, and Ocwen brings this motion to hold them accountable for their clear violations of this Court's order.

## BACKGROUND

Plaintiff, Sherri Cain, filed this action on April 30, 2016, asserting claims against Ocwen regarding the servicing of her mortgage loan. As part of the discovery process, the parties filed an agreed motion for entry of a protective order on October 24, 2016, "to protect the parties' legitimate interest in the confidentiality of sensitive discovery materials, while providing the parties with sufficient access to these materials." (Dkt. 14, ¶ 4.) As described below, the Court granted the motion on November 2, 2016, and entered an Agreed Confidentiality Order under Federal Rule of Civil Procedure 26(c)(1). (Dkt. 17, the "Order.") A copy of the Order is attached to this motion as **Exhibit A**. The parties eventually settled, and this case was dismissed as of September 25, 2017. (Dkt. 63.) Subsequently, Plaintiff's counsel wrongfully disclosed materials protected under the Order.

**The Agreed Confidentiality Order applies to Ocwen's loan records and remains in force.**

The Order follows this Court's Form LR 26.2 Model Confidentiality Order prescribed by Amended General Order 12-0018. (Ex. A, Dkt. 17.) It prevents the use or disclosure of documents designated as confidential "for any purpose whatsoever *other than in this litigation*" and is binding upon all counsel of record as well as the parties. (*Id.* at ¶¶ 5(a) & 17) (emphasis added). The Order specifically states that it "*shall remain in force after dismissal* or entry of a final judgment not subject to further appeal." (*Id.* at ¶ 14(a)) (emphasis added).

Pursuant to the Order, Ocwen designated its loan servicing notes for Plaintiff's mortgage loan account (the "Cain Servicing Notes") as "Confidential Information" which was necessary "to protect the business interests of [Ocwen]." (*Id.* at ¶ 2.) If Plaintiff's counsel disagreed with Ocwen's designation of any discovery materials as confidential, the Order established a process for challenging the designation. (*Id.* at ¶ 9.) The challenging party was first required to meet with the designating party to explain its basis for challenging the confidentiality designation. (*Id.* at ¶

2

9(a).) The designating party would then be afforded an opportunity to review and reconsider its designation. (*Id.*) If the designating party refused to remove the confidential designation, then the burden was on the challenging party to seek relief from this Court if it still believed the material was wrongly designated confidential. (*Id.* at ¶ 9(b).) Until the Court ruled on whether the challenged material was wrongly designated confidential, the parties were required to treat the material as confidential pursuant to the Order. (*Id.*) No party was free to simply ignore a confidentiality designation at any time.

At the conclusion of the case, confidential materials, including the Cain Servicing Notes, should have been returned within sixty-three days of dismissal, unless Plaintiff's counsel chose to destroy the documents and certify the fact of destruction. (*Id.* at ¶ 14(b) & n.2.) Plaintiff's counsel did not do that. Instead, as described below, Plaintiff's counsel retained Ocwen's confidential materials for use in other litigation in a manner that plainly violated the Order.

**Plaintiff's counsel used Ocwen's confidential loan records in unrelated litigation.**

In April 2018, a trial was pending in an unrelated case in the Northern District of Illinois against Ocwen captioned *Saccameno v. Ocwen Loan Servicing, LLC et al.*, Case No. 1:15-CV-01164.[1] Plaintiff's counsel in this case also represents the plaintiff, Monette Saccameno, in that case. Ocwen is represented by separate counsel. During the *Saccameno* trial, Plaintiff's counsel used the confidential Cain Servicing Notes to confront and attempt to discredit Ocwen's testifying witness before the jury. (Ex. B, *Saccameno* Dkt. 284, Trial Tr. at 629:12-17; 630:6-8.) The Cain Servicing Notes were not on Saccameno's trial exhibit list. (*See Saccameno* Dkt. 196.) Ocwen's trial counsel objected to the introduction of the confidential notes. (Ex. B, *Saccameno*

---

[1] This Court may take judicial notice of other matters pending in other cases in this District. See *Daniel v. Cook County*, 833 F.3d 728, 742 (7th Cir. 2016) ("Courts routinely take judicial notice of the actions of other courts or the contents of filings in other courts."). In the *Saccameno* case, the official trial transcript is found in docket entries 278-290. For the Court's convenience, relevant portions of the transcript are attached to this motion as **Exhibit B.**

Dkt. 284, Trial Tr. at 631:14, 632:1-633:25.) The trial judge allowed counsel to question the witness about the Cain Servicing Notes over Ocwen's objection. (*Id.* at 629:12, 634:24).

At no time did Plaintiff's counsel challenge the designation of the Cain Servicing Notes as confidential under the Agreed Confidentiality Order in this case. Instead, they simply ignored the designation and sandbagged Ocwen with the confidential documents in another case in front of a jury. Plaintiff's counsel's use of the Cain Servicing Notes during the *Saccameno* trial violated the Agreed Confidentiality Order entered by this Court and should result in sanctions.

## ARGUMENT

### 1. Violating a confidentiality order is sanctionable under Rule 37(b) as well as the Court's inherent authority.

"The ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other Branches." *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 796 (1987). "If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls 'the judicial power of the United States' would be a mere mockery." *Id.* (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911)).

A party that violates a confidentiality order under Rule 26(c) may be sanctioned under Rule 37(b), which covers orders to "permit discovery." Fed. R. Civ. P. 37(b)(2); see *Whitehead v. Gateway Chevrolet, Oldsmobile*, No. 03-C-5684, 2004 WL 1459478, at *3 (N.D. Ill. June 29, 2004) (entering sanctions against counsel under Rule 37(b) for violating stipulated confidentiality order); see also *American Nat'l Bank and Trust Co. of Chicago v. AXA Client Solutions*, No. 00-C-6786, 2002 WL 1067696, at *5 (N.D. Ill. May 28, 2002) (entering sanctions

against party under Rule 37(b) for violation of stipulated confidentiality order).[2] Courts have

wide latitude in fashioning appropriate sanctions. See *Johnson v. Kakvand*, 192 F.3d 656, 661

(7th Cir. 1999).

In addition, courts have inherent authority to enter sanctions "governed not by rule or

statute but by the control necessarily vested in courts to manage their own affairs so as to achieve

the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43

(1991) (quoting *Link v. Wabash Railroad Co.*, 370 U.S. 626, 630–631 (1962)). This inherent

authority "can be invoked even if procedural rules exist which sanction the same conduct." *Id.* at

49; *Dotson v. Bravo*, 202 F.R.D. 559, 574 (N.D. Ill. 2001) (citing *Barnhill v. United States*, 11

F.3d 1360, 1367 (7th Cir. 1993)) (recognizing the court's inherent authority to rectify abuses to

the judicial process through sanctions). Accordingly, sanctions in this case may be entered under

Rule 37(b) and/or the Court's inherent power.

**2.      Plaintiff's counsel violated the Order in three ways.**

Plaintiff's counsel violated the Agreed Confidentiality Order in three ways that give rise

to this motion. First, Plaintiff's counsel violated the Order by using the Cain Servicing Notes to

support one of their other client's claims during the unrelated *Saccameno* trial. (Ex. B,

*Saccameno* Dkt. 284, Trial Tr. at 629:12-17; 637:12-638:17.) As discussed above, the Court

entered an Agreed Protective Order that prohibited Plaintiff's counsel from using documents

designated as confidential for any purpose other than this specific litigation. This prohibition is

---

[2] The circuit courts of appeal are split on the question of whether sanctions under Rule 37(b) may
be entered against a person that violates a protective order entered under Rule 26(c). *Compare
Lipscher, et al. v. LRP Publications, Inc.*, 266 F.3d 1305, 1323 (11th Cir. 2001) (Rule 37(b)
sanctions may not be awarded for violations of Rule 26(c) protective orders) *with Falstaff
Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770 (9th Cir. 1983) (Rule 37(b) sanctions may be
awarded for violations of Rule 26(c) protective orders). The Seventh Circuit has not addressed
this question directly; however, as demonstrated by the *Whitehead* and *American National Bank*
cases, courts in this District have aligned themselves with the Ninth Circuit and other courts that
permit sanctions under Rule 37(b) for protective order violations.

neither mechanical nor meaningless. The purpose is to protect Ocwen's business interests by preventing misuse of its trade secrets, research, and technical, commercial, or financial information. (Ex. A, Dkt. 17 at ¶ 2.) Ocwen labeled the Cain Servicing Notes as "CONFIDENTIAL" for this exact purpose. There cannot be a more plain violation of a protective order than accepting the production of confidential materials in one case and then using those same materials in a different case.

Second, Plaintiff's counsel further violated the Order by failing to follow the exclusive process established by this Court for disputing confidentiality designations. Neither Plaintiff nor her counsel ever challenged the designation of the Cain Servicing Notes as confidential. To the extent that Plaintiff's counsel may believe the Cain Servicing Notes were inappropriately marked confidential, this defense is unavailing because, as set forth above, the terms of the Order dictated an exclusive procedure for challenging a confidentiality designation that called for conferences between counsel and, if necessary, motion practice. (Ex A, Dkt. 17 at ¶ 9.) This deliberate disregard for the specific procedures established by the Order constitutes an independent violation that merits sanctions. *See Whitehead*, 2004 WL 1459478, at *4 (sanctioning plaintiff's counsel in part for failing to abide by the procedure for challenging a confidentiality designation set forth in the parties' agreed protective order).

Finally, counsel's continued retention of the Cain Servicing Notes 10 months after this case was dismissed is yet a further violation of the terms of the Order. Paragraph 14(b) of the Order states that:

> Within sixty-three days after dismissal … all Confidential Information and documents marked "CONFIDENTIAL" under this Order, including all copies …, shall be returned to the producing party unless: (1) the document has been offered into evidence or filed without restriction as to disclosure; (2) the parties agree to destruction to the extent practicable in lieu of return [with certification of destruction]; or (3) as to documents bearing the notations, summations, or other

> mental impressions of the receiving party, that party elects to destroy the
> documents and certifies to the producing party that it has done so.

(Ex A, Dkt. 17 at ¶ 14(b).) None of the enumerated exceptions apply in this case. Thus,

Plaintiff's counsel was under an obligation to either return or destroy the Cain Servicing Notes

by no later than November 27, 2017, sixty-three days after the case was dismissed with

prejudice. But the fact that Plaintiff's counsel remained in possession of the Cain Servicing

Notes at least through the *Saccameno* trial this past April is proof that they violated Paragraph 14

of the Order as well.

**3.      Sanctions are appropriate under these circumstances.**

Courts in this District have sanctioned counsel for similar conduct in violation of

confidentiality orders. In *Whitehead*, the court held an attorney's use of confidential discovery

materials that were obtained in one case to support the claims of another party in another case

was a "flagrant" violation of the protective order, and the offending counsel was ordered to pay

$15,202 in attorneys' fees as a sanction under Rule 37(b). 2004 WL 1459478, at *3-5. In

*American Nat. Bank*, the court sanctioned a party for disclosing information that had been

designated as confidential under an agreed protective order. 2012 WL 1067696, at *4 (citing

*Matter of Krynicki*, 983 F.2d 74, 78 (7th Cir. 1992)) (upon entry of a protective order,

"[d]issemination [of information obtained through discovery] becomes controlled by the terms of

the protective order and the parties must comply with the terms of the protective order or subject

themselves to possible sanctions."). The court ordered the offending party to pay an amount

equal to the attorneys' fees and costs incurred to investigate the violation and bring a motion for

relief, and further ordered the offending party to take action to comply with the confidentiality

order. *Id.* at *7. Similarly, in *Grove Fresh Distributors, Inc. v. John Labatt Ltd.*, the court held

an attorney in contempt and entered sanctions for post-settlement conduct that included

disclosing confidential information covered by a protective order. 888 F. Supp. 1427, 1445-47 (N.D. Ill. 1995).

Sanctions should be entered in this case as well. Plaintiff was represented by experienced counsel that stipulated to the entry of the Agreed Confidentiality Order and agreed to be bound by its terms in a manner that survived beyond the dismissal of this case. Their use of the confidential Cain Servicing Notes during the *Saccameno* trial violated the Order in several ways and crossed the line into sanctionable conduct. The Court should hold counsel accountable for their actions and enter appropriate sanctions.

## CONCLUSION

Plaintiff's counsel should be sanctioned as a result of their disregard for this Court's Agreed Confidentiality Order. Therefore, Ocwen respectfully requests that the Court enter an order 1) commanding Plaintiff's counsel to comply with the Agreed Confidentiality Order by returning or destroying all confidential documents produced in this litigation; 2) commanding Plaintiff's counsel to submit a sworn certificate or affidavit of compliance with the Court stating that they have either returned or destroyed all confidential documents received in this litigation and that they will never use such information in another case again; 3) award Ocwen its fees and costs in connection with investigating this dispute and bringing this motion; and 4) such further sanctions and other relief as the Court deems just and appropriate.

DATED:  July 23, 2018                    Respectfully Submitted,

                                         Ocwen Loan Servicing, LLC

                                         By:_____/s/ Simon Fleischmann_____
                                             One of Its Attorneys

Simon Fleischmann (6274929)
*sfleischmann@lockelord.com*
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois  60606
Telephone: 312.443.0700

# EXHIBIT A



## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SHERRI CAIN                 )   Case No. 1:16-cv-04836

                              )
         Plaintiff,            )   Judge Bucklo

                              )

vs.                             )

                              )

OCWEN LOAN SERVICING, LLC     )

                              )

         Defendant.         )

## AGREED CONFIDENTIALITY ORDER

The parties to this Agreed Confidentiality Order have agreed to the terms of this Order; accordingly, it is ORDERED:

1. **Scope.** All materials produced or adduced in the course of discovery, including initial disclosures, responses to discovery requests, deposition testimony and exhibits, and information derived directly therefrom (hereinafter collectively "documents"), shall be subject to this Order concerning Confidential Information as defined below. This Order is subject to the Local Rules of this District and the Federal Rules of Civil Procedure on matters of procedure and calculation of time periods.

2. **Confidential Information.** As used in this Order, "Confidential Information" means information designated as "CONFIDENTIAL" by the producing party that falls within one or more of the following categories: (a) information prohibited from disclosure by statute; (b) information that reveals trade secrets – confidentiality is necessary for this category to protect the business interests of Defendant Ocwen Loan Servicing, LLC and/or the business interests of third parties; (c) research, technical, commercial or financial information that the party has maintained as confidential – confidentiality is necessary for this category to protect the business

interests of Defendant Ocwen Loan Servicing, LLC and/or the business interests of third parties; (d) medical information concerning any individual – confidentiality is necessary for this category to protect the individual's right to privacy; (e) personal identity information – confidentiality is necessary for this category to protect the individual's right to privacy; (f) income tax returns (including attached schedules and forms), W-2 forms and 1099 forms – confidentiality is necessary for this category to protect the individual's right to privacy; or (g) personnel or employment records of a person who is not a party to the case – confidentiality is necessary for this category to protect the individual's right to privacy. Information or documents that are available to the public may not be designated as Confidential Information.

3. **Designation.**

(a) A party may designate a document as Confidential Information for protection under this Order by placing or affixing the words "CONFIDENTIAL" on the document and on all copies in a manner that will not interfere with the legibility of the document. As used in this Order, "copies" includes electronic images, duplicates, extracts, summaries or descriptions that contain the Confidential Information. The marking "CONFIDENTIAL" shall be applied prior to or at the time of the documents are produced or disclosed. Applying the marking "CONFIDENTIAL" to a document does not mean that the document has any status or protection by statute or otherwise except to the extent and for the purposes of this Order. Any copies that are made of any documents marked "CONFIDENTIAL" shall also be so marked, except that indices, electronic databases or lists of documents that do not contain substantial portions or images of the text of marked documents and do not otherwise disclose the substance of the Confidential Information are not required to be marked.

(b)    The designation of a document as Confidential Information is a certification by an

attorney or a party appearing pro se that the document contains Confidential Information as

defined in this order.[1]

### 4.    Depositions.

Unless all parties agree on the record at the time the deposition testimony is taken, all

deposition testimony taken in this case shall be treated as Confidential Information until the

expiration of the following: No later than the fourteenth day after the transcript is delivered to

any party or the witness, and in no event later than 60 days after the testimony was given.

Within this time period, a party may serve a Notice of Designation to all parties of record as to

specific portions of the testimony that are designated Confidential Information, and thereafter

only those portions identified in the Notice of Designation shall be protected by the terms of this

Order. The failure to serve a timely Notice of Designation shall waive any designation of

testimony taken in that deposition as Confidential Information, unless otherwise ordered by the

Court.

### 5.    Protection of Confidential Material.

(a)    **General Protections.**  Confidential Information shall not be used or disclosed by

the parties, counsel for the parties or any other persons identified in subparagraph (b) for any

purpose whatsoever other than in this litigation, including any appeal thereof.

(b)    **Limited Third-Party Disclosures.**  The parties and counsel for the parties shall

not disclose or permit the disclosure of any Confidential Information to any third person or entity

---

[1] An attorney who reviews the documents and designates them as CONFIDENTIAL must be admitted to the Bar of at least one state but need not be admitted to practice in the Northern District of Illinois unless the lawyer is appearing generally in the case on behalf of a party. By designating documents confidential pursuant to this Order, counsel submits to the jurisdiction and sanctions of this Court on the subject matter of the designation.

except as set forth in subparagraphs (1)-(9). Subject to these requirements, the following

categories of persons may be allowed to review Confidential Information:

    (1)    **Counsel.** Counsel for the parties and employees of counsel who have responsibility for the action;

    (2)    **Parties.** Individual parties and employees of a party but only to the extent counsel determines in good faith that the employee's assistance is reasonably necessary to the conduct of the litigation in which the information is disclosed;

    (3)    **The Court and its personnel;**

    (4)    **Court Reporters and Recorders.** Court reporters and recorders engaged for depositions;

    (5)    **Contractors.** Those persons specifically engaged for the limited purpose of making copies of documents or organizing or processing documents, including outside vendors hired to process electronically stored documents;

    (6)    **Consultants and Experts.** Consultants, investigators, or experts employed by the parties or counsel for the parties to assist in the preparation and trial of this action but only after such persons have completed the certification contained in Attachment A, Acknowledgment of Understanding and Agreement to Be Bound;

    (7)    **Witnesses at depositions.** During their depositions, witnesses in this action to whom disclosure is reasonably necessary. Witnesses shall not retain a copy of documents containing Confidential Information, except witnesses may receive a copy of all exhibits marked at their depositions in connection with review of the transcripts. Pages of transcribed deposition testimony or exhibits to depositions that are designated as Confidential Information pursuant to the process set out in this Order must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order.

    (8)    **Author or recipient.** The author or recipient of the document (not including a person who received the document in the course of litigation); and

    (9)    Others by Consent. Other persons only by written consent of the producing party or upon order of the Court and on such conditions as may be agreed or ordered.

(e)     **Control of Documents.** Counsel for the parties shall make reasonable efforts to prevent unauthorized or inadvertent disclosure of Confidential Information. Counsel shall maintain the originals of the forms signed by persons acknowledging their obligations under this Order for a period of three years after the termination of the case.

6.     **Inadvertent Failure to Designate.** An inadvertent failure to designate a document as Confidential Information does not, standing alone, waive the right to so designate the document; provided, however, that a failure to serve a timely Notice of Designation of deposition testimony as required by this Order, even if inadvertent, waives any protection for deposition testimony. If a party designates a document as Confidential Information after it was initially produced, the receiving party, on notification of the designation, must make a reasonable effort to assure that the document is treated in accordance with the provisions of this Order. No party shall be found to have violated this Order for failing to maintain the confidentiality of material during a time when that material has not been designated Confidential Information, even where the failure to so designate was inadvertent and where the material is subsequently designated Confidential Information.

7.     **Filing of Confidential Information.** This Order does not, by itself, authorize the filing of any document under seal. Any party wishing to file a document designated as Confidential Information in connection with a motion, brief or other submission to the Court must comply with LR 26.2.

8.     **No Greater Protection of Specific Documents.** Except on privilege grounds not addressed by this Order, no party may withhold information from discovery on the ground that it requires protection greater than that afforded by this Order unless the party moves for an order providing such special protection.

9. **Challenges by a Party to Designation as Confidential Information.** The designation of any material or document as Confidential Information is subject to challenge by any party. The following procedure shall apply to any such challenge.

(a) **Meet and Confer.** A party challenging the designation of Confidential Information must do so in good faith and must begin the process by conferring directly with counsel for the designating party. In conferring, the challenging party must explain the basis for its belief that the confidentiality designation was not proper and must give the designating party an opportunity to review the designated material, to reconsider the designation, and, if no change in designation is offered, to explain the basis for the designation. The designating party must respond to the challenge within five (5) business days.

(b) **Judicial Intervention**. A party that elects to challenge a confidentiality designation may file and serve a motion that identifies the challenged material and sets forth in detail the basis for the challenge. Each such motion must be accompanied by a competent declaration that affirms that the movant has complied with the meet and confer requirements of this procedure. The burden of persuasion in any such challenge proceeding shall be on the designating party. Until the Court rules on the challenge, all parties shall continue to treat the materials as Confidential Information under the terms of this Order.

10. **Action by the Court.** Applications to the Court for an order relating to materials or documents designated Confidential Information shall be by motion. Nothing in this Order or any action or agreement of a party under this Order limits the Court's power to make orders concerning the disclosure of documents produced in discovery or at trial.

11. **Use of Confidential Documents or Information at Trial.** Nothing in this Order shall be construed to affect the use of any document, material, or information at any trial or

hearing. A party that intends to present or that anticipates that another party may present Confidential information at a hearing or trial shall bring that issue to the Court's and parties' attention by motion or in a pretrial memorandum without disclosing the Confidential Information. The Court may thereafter make such orders as are necessary to govern the use of such documents or information at trial.

12.     **Confidential Information Subpoenaed or Ordered Produced in Other Litigation.**

(a)     If a receiving party is served with a subpoena or an order issued in other litigation that would compel disclosure of any material or document designated in this action as Confidential Information, the receiving party must so notify the designating party, in writing, immediately and in no event more than three court days after receiving the subpoena or order. Such notification must include a copy of the subpoena or court order.

(b)     The receiving party also must immediately inform in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is the subject of this Order. In addition, the receiving party must deliver a copy of this Order promptly to the party in the other action that caused the subpoena to issue.

(c)     The purpose of imposing these duties is to alert the interested persons to the existence of this Order and to afford the designating party in this case an opportunity to try to protect its Confidential Information in the court from which the subpoena or order issued. The designating party shall bear the burden and the expense of seeking protection in that court of its Confidential Information, and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive from another court.

The obligations set forth in this paragraph remain in effect while the party has in its possession, custody or control Confidential Information by the other party to this case.

13.     **Challenges by Members of the Public to Sealing Orders.**  A party or interested member of the public has a right to challenge the sealing of particular documents that have been filed under seal, and the party asserting confidentiality will have the burden of demonstrating the propriety of filing under seal.

14.     **Obligations on Conclusion of Litigation.**

(a)     **Order Continues in Force.**  Unless otherwise agreed or ordered, this Order shall remain in force after dismissal or entry of final judgment not subject to further appeal.

(b)     **Obligations at Conclusion of Litigation.**  Within sixty-three days after dismissal or entry of final judgment not subject to further appeal, all Confidential Information and documents marked "CONFIDENTIAL" under this Order, including copies as defined in 3(a), shall be returned to the producing party unless: (1) the document has been offered into evidence or filed without restriction as to disclosure; (2) the parties agree to destruction to the extent practicable in lieu of return;[2] or (3) as to documents bearing the notations, summations, or other mental impressions of the receiving party, that party elects to destroy the documents and certifies to the producing party that it has done so.

(c)     **Retention of Work Product and one set of Filed Documents.**  Notwithstanding the above requirements to return or destroy documents, counsel may retain (1) attorney work product, including an index that refers or relates to designated Confidential Information so long as that work product does not duplicate verbatim substantial portions of Confidential

---

[2] The parties may choose to agree that the receiving party shall destroy documents containing Confidential Information and certify the fact of destruction, and that the receiving party shall not be required to locate, isolate and return e-mails (including attachments to e-mails) that may include Confidential Information, or Confidential Information contained in deposition transcripts or drafts or final expert reports.

Information, and (2) one complete set of all documents filed with the Court including those filed under seal. Any retained Confidential Information shall continue to be protected under this Order. An attorney may use his or her work product in subsequent litigation, provided that its use does not disclose or use Confidential Information.

    (d)    **Deletion of Documents filed under Seal from Electronic Case Filing (ECF) System.** Filings under seal shall be deleted from the ECF system only upon order of the Court.

    15.    **Order Subject to Modification.** This Order shall be subject to modification by the Court on its own initiative or on motion of a party or any other person with standing concerning the subject matter.

    16.    **No Prior Judicial Determination.** This Order is entered based on the representations and agreements of the parties and for the purpose of facilitating discovery. Nothing herein shall be construed or presented as a judicial determination that any document or material designated Confidential Information by counsel or the parties is entitled to protection under Rule 26(c) of the Federal Rules of Civil Procedure or otherwise until such time as the Court may rule on a specific document or issue.

    17.    **Persons Bound.** This Order shall take effect when entered and shall be binding upon all counsel of record and their law firms, the parties, and persons made subject to this Order by its terms.

    *So Ordered.*

Dated: 11/2/2016

Elaine E. Bucklo
The Honorable Elaine E. Bucklo

## EXHIBIT A

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SHERRI CAIN                )   Case No. 1:16-cv-04836

      Plaintiff,      )   Judge Bucklo

   vs.                 )

OCWEN LOAN SERVICING, LLC   )

      Defendant.    )

#### WRITTEN ASSURANCE

_____ declares that:

I reside at _____ in the City of _____,

County of _____, State of _____. My telephone

number is _____.

I am currently employed by _____, located

at _____, and my current job

title is _____.

I have read and I understand the terms of the Protective Order dated

_____, filed in Case No. 16-cv-04836, pending in the United States District

Court for the Northern District of Illinois. I agree to comply with and be bound by the provisions

of the Protective Order. I understand that any violation of the Protective Order may subject me to

sanctions by the Court.

I shall not divulge any documents, or copies of documents, designated "Confidential"

obtained pursuant to such Protective Order, or the contents of such documents, to any person

other than those specifically authorized by the Protective Order. I shall not copy or use such

documents except for the purposes of this action and pursuant to the terms of the Protective Order.

As soon as practical, but no later than 30 days after final termination of this action, I shall return to the attorney from whom I have received them, any documents in my possession designated "Confidential", and all copies, excerpts, summaries, notes, digests, abstracts, and indices relating to such documents.

I submit myself to the jurisdiction of the United States District Court for the Northern District of Illinois for the purpose of enforcing or otherwise providing relief relating to the Protective Order.

Executed on _____     _____
             (Date)                            (Signature)

# EXHIBIT B

```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                       EASTERN DIVISION

 3   MONETTE SACCAMENO,                  )  No. 15 C 1164
                                         )
 4                  Plaintiff,           )
                                         )
 5            vs.                        )
                                         )
 6   OCWEN LOAN SERVICING, LLC, and      )
     U.S. BANK NATIONAL ASSOCIATION, as  )
 7   trustee for C-BASS MORTGAGE LOAN    )
     ASSET-BACKED CERTIFICATES, Series   )
 8   2007 RPI,                           )  Chicago, Illinois
                                         )  April 6, 2018
 9                  Defendants.          )  9:24 a.m.

10                         VOLUME 4A
             TRANSCRIPT OF PROCEEDINGS - TRIAL
11       BEFORE THE HON. JOAN B. GOTTSCHALL and a Jury

12   APPEARANCES:

13   For the Plaintiff:     NICK WOOTEN, LLC, by
                            MR. NICK WOOTEN
14                          4935 Bay Hill Drive
                            Conway, AR  72034
15
                            SULAIMAN LAW GROUP, LTD., by
16                          MR. MOHAMMED O. BADWAN
                            MR. ROSS H. ZAMBON
17                          2500 South Highland Avenue,
                            Suite 200
18                          Lombard, IL  60148

19   For the Defendants:    DUANE MORRIS, LLP, by
                            MR. ALEXANDER D. BONO
20                          MS. LYNNE E. EVANS
                            MS. KELLY K. HUFF
21                          30 South 17th Street
                            Philadelphia, PA  19103
22

23   Court Reporter:        PATRICK J. MULLEN, OCR
                            LISA H. BREITER, CSR, RMR, CRR
24                          Official Court Reporter
                            219 South Dearborn Street, Room 1854B,
25                          Chicago, Illinois  60604
                            (312) 818-6683
```

628

1 (indicating)?

2 Q. Okay.

3 A. Okay. So this product, if she accepted this, this right

4 here, this amount here, the principal and interest amount, in

09:58:51 5 contrast to what her current mortgage is, her current mortgage

6 has like just the P and I without escrow involved over a

7 thousand dollars. This particular loan modification would have

8 cut that payment, her principal and interest, down to 434.92

9 for the first five years, and then it would only have jumped up

09:59:16 10 to 587.64, taking her out of her current adjustable rate note

11 that could have gone from 8-1/2 percent up to 14.9 percent or

12 whatever it was.

13 So this would have been the difference in the amount

14 that she would have paid monthly. So if this is what she was

09:59:50 15 trying to achieve, a regular -- or a lower monthly payment,

16 then this actual loan modification and the restructuring of

17 that amount of that note would have achieved this to give her a

18 lower monthly payment.

19 Q. Now just to be clear, are you saying that this loan

10:00:15 20 modification was offered to settle her dispute with Ocwen in

21 July of 2015?

22 A. I didn't say that. I said that it was loss mitigation that

23 was extended. There was nothing in our comment log or anything

24 that says we're only offering this modification in order to

10:00:33 25 settle this litigation. That's not why it was extended.

629

1 Q. Are you saying to the jury that she should have accepted

2 this to resolve the litigation?

3 A. I did not say that. I think we covered that with the first

4 one.

10:00:49 5 Q. So all those other questions I asked about the purpose of

6 the modification for the first one apply to the second.

7 A. Yes.

8 Q. You're saying this is just a factual recitation of events

9 that occurred over the course of your relationship with Monette

10:01:03 10 Saccameno?

11 A. Me reporting the servicing history of the loan.

12 MR. WOOTEN: Your Honor, there is an issue that I

13 think is a rebuttal issue that I have not spoken with the other

14 side or you about, and I think I need to address it before I

10:01:31 15 ask my last two or three questions because it involves rebuttal

16 evidence.

17 THE COURT: Okay. Let's meet at the side.

18 (Discussion at sidebar on the record.)

19 MR. WOOTEN: So, Your Honor, we have two other clients

10:01:58 20 who have had cases dismissed instead of discharged by Ocwen.

21 We have a notes log for those two clients as well as the

22 respective pages that show the dismissal instead of a

23 discharge.

24 THE COURT: Are you saying that there's a miscoding?

10:02:12 25 MR. WOOTEN: Yes.

630

1 THE COURT: Okay.

2 MR. WOOTEN: We would like to show these to the

3 witness to show that this has happened on two other occasions

4 that we're aware of.

10:02:20 5 THE COURT: Dates?

6 MR. WOOTEN: This is Sherry Kane's incident which

7 occurred in 2010, and Sandra Freeman's occurred in 2013 about

8 three months before Monette's.

9 THE COURT: She testified that she's never seen

10:02:35 10 anything like this before, so that's the context, right?

11 MR. WOOTEN: Yes.

12 THE COURT: I guess the question is this. It is

13 rebuttal evidence, but you're trying to avoid recalling her.

14 Is that what you're trying to do?

10:02:46 15 MR. WOOTEN: Correct.

16 THE COURT: Mr. Bono?

17 MR. BONO: We're going to bring her back, so I think

18 he should do his rebuttal when rebuttal comes, not now. It's

19 one thing to do some things out of order, but we ought to

10:02:59 20 follow some sort of trial protocol.

21 THE COURT: Well, are you guaranteeing you're going to

22 bring her back?

23 MR. WOOTEN: Well, they told me before we started that

24 they wanted her to go home because she had somebody getting

10:03:09 25 married. My only question, Your Honor --

631

1 MR. BONO: We're putting on a case, Your Honor.

2 MR. WOOTEN: She has testified repeatedly she's never

3 seen this before both in my direct and his testimony, and it's

4 been a major factor. Really, what we would like to do is just

10:03:22 5 show the two pages of the relevant document for each instance

6 and show her the discharge order.

7 THE COURT: Well, I think I'm going to let you do it.

8 If you want to do it now, just remember you cannot do it again.

9 MR. WOOTEN: Right.

10:03:36 10 THE COURT: Okay.

11 MR. WOOTEN: I'm just going to do it, and I think

12 that's what we'll end with.

13 THE COURT: Okay.

14 MR. BONO: Your Honor, we note our objection.

10:03:44 15 THE COURT: Yes.

16 (Discussion at sidebar concluded.)

17 MR. WOOTEN: Your Honor, may I approach?

18 THE COURT: Hold on one second.

19 (Discussion off the record.)

10:04:47 20 MR. WOOTEN: May I approach to give these documents to

21 the witness?

22 THE COURT: Sure.

23 BY MR. WOOTEN:

24 Q. (Handing documents to the witness.)

10:05:03 25 A. Thank you.

632

1    (Discussion off the record.)

2         MR. WOOTEN:  Your Honor, they're just taking a moment

3    to look at that order.

4    (Discussion off the record.)

10:07:09 5         MR. BONO:  We would object to this, Your Honor.

6         THE COURT:  For any reasons other than the ones that

7    you've already stated?

8         MR. BONO:  Yes.

9    (Discussion at sidebar on the record.)

10:07:21 10         MR. BONO:  We looked at this.  If they can point us to

11   it, we don't see any matching dates between this order and

12   Ocwen's records.

13         MR. WOOTEN:  So what happened, Your Honor, this

14   document shows in August of 2010 --

10:07:33 15         THE COURT:  What am I looking at?

16         MR. WOOTEN:  This is the notes log.  It shows in the

17   last line that the bankruptcy was dismissed.

18         THE COURT:  Yes?

19         MS. HUFF:  Here it is (indicating).

10:07:45 20         MR. WOOTEN:  The second page shows that immediately

21   following.

22         MS. HUFF:  Two months later.

23         MR. WOOTEN:  10/14/20.

24         THE COURT:  What am I looking at here?  I don't know

10:07:56 25   what this is.

633

1         MR. WOOTEN:  So this is the Ocwen notes log for this

2    account.

3         THE COURT:  Some different account.

4         MR. WOOTEN:  On August 14th, it shows the bankruptcy

10:08:05 5    discharged -- or dismissed, but then they come back in October

6    and show it discharged.

7         THE COURT:  Okay.  So in August they said it was

8    dismissed, and in October they said it was discharged.

9         MR. WOOTEN:  Yes.

10:08:17 10         MR. BONO:  But the order, I mean, the order is

11   October.  That's when it was discharged, so that's accurate.

12         MR. WOOTEN:  But why did they code it as dismissed?

13         THE COURT:  Well, it was before the discharge.

14         MR. WOOTEN:  Right.  But they also didn't have a --

10:08:33 15         MR. BONO:  So they didn't --

16         THE COURT:  One person at a time.

17         MR. WOOTEN:  They also didn't have a discharge order

18   when they miscoded this.  They were looking at a notice of

19   cure.  The key to it is when you miscode it, collections

10:08:45 20   restart.  When you mark it as dismissed, collections restart.

21         THE COURT:  All right.  So what's the objection?

22         MR. BONO:  Irrelevant and 403.

23         THE COURT:  It shows something messed up about the

24   records.  That's for sure.

10:08:57 25         MS. HUFF:  Your Honor, we don't know.  The reason it's

634

1    different is because we have the complete exhibit.  We have

2    that imaged document that the witness can look at, and she can

3    tie that to what's in the record.  Here we don't have anything

4    in August of 2010.  We don't have the actual document as an

5    exhibit.

10:09:14 6         THE COURT:  Right, but we know that coding the

7    dismissal was a mistake because it --

8         MR. BONO:  We haven't seen it, Your Honor.

9         MR. WOOTEN:  There's only one discharge in a

10:09:20 10   bankruptcy case, Your Honor.

11         THE COURT:  Right.

12         MR. WOOTEN:  And that's a dismissal before the

13   bankruptcy discharge order came in.

14         THE COURT:  Now say that again because that made no

10:09:28 15   sense.

16         MR. WOOTEN:  They can only code one discharge.  This

17   is two months before this order, and they mark it as dismissed

18   which allows them to resume collections.

19         THE COURT:  Right, that's what I just said.

10:09:40 20         MR. WOOTEN:  That's exactly what we said.

21         THE COURT:  That's what I just said.

22         MR. WOOTEN:  That's the relevance of it, that they

23   miscoded it.

24         THE COURT:  You know, I'm going to allow it.

10:09:45 25         All right.  What else?

635

1         MR. WOOTEN:  This is just a copy of the order that

2    shows that she was discharged.

3         THE COURT:  Okay.

4         MR. WOOTEN:  That's it.

10:09:48 5         THE COURT:  All right.

6         MR. BONO:  Can we have copies of these things?

7         THE COURT:  You know, there will be plenty of time if

8    we're not reading this correctly for you to find the evidence

9    and rebut it.  Okay?  I mean, it looks to me like a similar

10:10:01 10   screw-up.  That's what it looks like.

11         MR. BONO:  It doesn't look like that to me, Your

12   Honor.

13         THE COURT:  Well, what does it look like to you?

14         MR. BONO:  It looks like they did something in August,

10:10:11 15   and then when the order came in they did something correctly.

16         MR. WOOTEN:  Well, you can offer that as an

17   alternative explanation.

18         THE COURT:  All right.  No, no, that they did

19   something in August is not good enough.

10:10:18 20         Let's go on.  Is there another objection with another

21   document?

22         MR. WOOTEN:  It's the same issue with the other

23   document except it's contemporaneously closer in time.

24         THE COURT:  I haven't seen the document.

10:10:32 25         MR. WOOTEN:  I've got to pull that together.

636

1       THE COURT:  Well, go ahead.  We don't have a lot of
2   time.
3       (Discussion at sidebar concluded.)
4       THE COURT:  Well, aren't we getting it?  Aren't we
10:10:40  5  going to see it at this point?  Aren't we waiting to see the
6   other document?
7       MR. WOOTEN:  I'm sorry, Your Honor?
8       THE COURT:  Is there another document that you all
9   want me to look at?
10:10:49 10  MR. WOOTEN:  I'm pulling the other one up.  I'm
11  grabbing the other document.
12      THE COURT:  Okay.
13      (Discussion off the record.)
14      MR. WOOTEN:  I don't know where the copy is.
10:11:10 15  THE COURT:  Okay.  So we just have one, and I've ruled
16  on that.  Okay.
17      (Discussion off the record.)
18  BY MR. WOOTEN:
19  Q.  Ms. Feezer, I apologize for that momentary delay.  You
10:11:54 20  indicated that you had never seen an instance in your knowledge
21  where Ocwen had had a loan coded as dismissed instead of
22  discharged, right?
23  A.  Correct.
24  Q.  Okay.  I've handed you portion of the servicing records for
10:12:10 25  an Ocwen customer named Sherry Kane who's also a client of

637

1   mine.
2       (Discussion off the record.)
3       MR. BONO:  Objection, Your Honor.
4       THE COURT:  I don't know what you're objecting to, and
10:12:23  5  I don't know what's happening.  I'm just sitting here.
6       MR. BONO:  He can't publish a document that's not
7   admitted.  He's putting it on the ELMO.
8       THE COURT:  It's not in evidence, so I don't think
9   it's time yet.
10:12:34 10  MR. WOOTEN:  All right.
11  BY MR. WOOTEN:
12  Q.  Ms. Feezer, take a look at document number 2062, please.
13  A.  Okay.
14  Q.  Do you see the last line of that notes log indicates a
10:12:47 15  bankruptcy dismissed on August 20th, 2010?
16  A.  Yes.
17  Q.  If you'll flip over to page 2073, on October 14th, 2010,
18  does it now show that bankruptcy discharged?
19  A.  Yes.
10:13:22 20  Q.  So that is at least one other instance where a dismissal
21  was entered instead of a discharge?
22  A.  Number one, I'm not familiar with the account.  It's
23  referenced with a loan number and nothing else.  It's an
24  excerpt, and I have no independent knowledge of this.  I've
10:13:47 25  never worked on this case.  I've never reviewed this case.  So

638

1   I'm taking what you're representing to me as your
2   interpretation of my business records with respect to this
3   specific loan number.  So I can't definitively say what -- I
4   mean, I can say what you stated was written on here, but I have
10:14:09  5  no information with respect to whether or not the first entry
6   was correct or incorrect.
7       MR. WOOTEN:  All right, Your Honor.  Do we need to
8   offer these for evidence, to mark it as our next exhibit?
9       THE COURT:  You said you do not need to offer it?
10:14:29 10  MR. WOOTEN:  Do you want us to offer this for purposes
11  of the record?
12      THE COURT:  You decide.
13      MR. WOOTEN:  We will move to admit these based on her
14  testimony, Your Honor, for what the value is.
10:14:41 15  THE COURT:  I think that you can establish what the
16  records show, and that's all the witness can do for us at this
17  point.  No, I'm not going to let them in on this record.
18      MR. WOOTEN:  Okay.  Thank you, Your Honor.  Now let me
19  speak to my colleague about a couple notes.
10:15:10 20  (Discussion off the record.)
21  BY MR. WOOTEN:
22  Q.  Is there any claim of a payment default by Monette
23  Saccameno after the discharge order was entered in this case?
24  A.  Can you repeat that?
10:15:32 25  Q.  Is there any claim of a payment default by Monette

639

1   Saccameno after the discharge was entered in this case?
2   A.  That's what started this, that she disputed the payments.
3   Q.  Ma'am, I'm asking if Ocwen -- after all the evidence we've
4   gone through today, is there any dispute that Monette
10:15:55  5  Saccameno did not have a payment default after the bankruptcy
6   was entered, a discharge?
7   A.  This is, I think, now the fifth time I've answered this
8   question, but it's been over a couple days.  But, yes, I've
9   already stated that as of the date, due to the miscoding, it
10:16:14 10  was not adjusted at the time that we received the notice of
11  final cure and the discharge, no.  But we did eventually get
12  the information that it was discharged.
13  Q.  Okay.  Is it Ocwen's position that at the point Ocwen began
14  to reject payments in September of 2013 that that was because
10:16:37 15  of Marla's mistake as well?
16  A.  With respect to -- again, that covered through a time
17  period, yes, that there was research letters that were going
18  out and there was corrections to the loan.  So yes, it did have
19  an impact on it.  But no, the account was adjusted with respect
10:17:04 20  to the fees and bringing the account current, and then there
21  was subsequent research.  Obviously, I think we went through
22  that with Ms. Van Sky, about her feeling it was adequate.  So
23  with respect to -- there was ongoing research disputes with
24  respect to the account, yes, by the customer, yes.
10:17:35 25  MR. WOOTEN:  Nothing further, Your Honor.

640

1 THE COURT: Mr. Bono?

2 MR. BONO: Your Honor, we're going to be brief. I

3 think I only have two questions, maybe three.

4 CROSS-EXAMINATION

10:17:44 5 BY MR. BONO:

6 Q. Good morning, Gina. You don't sound any better, but you're

7 looking better.

8 A. Thank you.

9 Q. The first question I have for you, there was a lot of

10:17:53 10 discussion this morning about loss mitigation, and I don't

11 think we went into it. Just tell the jury what loss mitigation

12 means at Ocwen and whether that's driven by Ms. Saccameno's

13 situation or whether Ocwen does loss mitigation generally.

14 A. We just do it generally. I mean, that's what --

10:18:11 15 Q. Explain what it is.

16 A. Well, loss mitigation is in order to assist the customer if

17 they do have financial hardships. Ocwen services loans of

18 struggling, default-type borrowers. We don't service A-type

19 papers like some of the bigger banks. So with respect to high

10:18:31 20 interest rates, you know, it takes people out of maybe what we

21 refer to as paper. What they qualify for at the time of

22 closing sometimes brings them into -- you know, doing loss

23 mitigation brings them out of a bad situation of a decision

24 that they made several years ago, such as adjustable rates that

10:18:54 25 had horrendous ceilings to them.

641

1 You know, there's no guarantee that the interest rates

2 would stay low and that they would go back up, and in this

3 particular instance the interest rates went down to like 3

4 percent during the time of her note and she was stuck at 8.5.

10:19:12 5 So there can be benefits to it, but again it's the customer's

6 decision. We made the offer, and that's how we do it through

7 loss mitigation.

8 Q. And loss mitigation happens as a matter of course at Ocwen

9 with borrowers? There doesn't have to be a lawsuit. Is that a

10:19:31 10 fair statement?

11 A. That is correct.

12 Q. Do you still have those papers that you were shown this

13 morning, the ones at 2062 and 2073?

14 A. Yes.

10:19:40 15 Q. And 2073, I think, referred to a dismissal -- I'm sorry --

16 a discharge?

17 A. Yes.

18 Q. In October, right?

19 A. Yes.

10:19:49 20 Q. If I told you there was actually a discharge order in that

21 case dated in October, would you say this was an accurate

22 entry?

23 A. That's what I'm saying. There's not enough information

24 here for me to make that determination. I'm not familiar with

10:20:06 25 the account, but I would -- if I was presented with this as a

642

1 research question to the law department, that would be one of

2 the first things that I would check, would be the docket to see

3 if maybe the case was dismissed but then ultimately discharged.

4 There are instances where if a borrower is in a Chapter 13, the

10:20:28 5 Chapter 13 trustee, if they're not making payments, can move to

6 dismiss the case. There's a whole host of reasons that could

7 happen. So I can't -- without having further information, I

8 have no idea if that's inaccurate to this situation or not.

9 MR. BONO: That's all I have, Your Honor. Thank you.

10:20:47 10 THE COURT: Anything further, Mr. Wooten?

11 MR. WOOTEN: No, ma'am.

12 THE COURT: Thank you, Ms. Feezer. You may step down.

13 THE WITNESS: Thank you.

14 (Witness excused.)

10:20:55 15 MR. WOOTEN: Your Honor, we would recall Jay

16 Patterson.

17 THE COURT: Okay. Mr. Patterson, you may retake the

18 witness stand.

19 (Witness resumes the stand.)

10:21:08 20 THE COURT: You were previously sworn in this matter,

21 were you not?

22 THE WITNESS: Yes, I was.

23 THE COURT: And you understand that you are still

24 under oath?

10:21:15 25 THE WITNESS: I do, Your Honor.

643

1 THE COURT: You may be seated.

2 THE WITNESS: Thank you.

3 BERNARD JAY PATTERSON,

4 PLAINTIFF'S WITNESS, PREVIOUSLY DULY SWORN,

10:21:17 5 DIRECT EXAMINATION (Resumed.)

6 BY MR. WOOTEN:

7 Q. Jay, good morning.

8 A. Good morning.

9 Q. Yesterday we talked about how you do your work and what

10:21:34 10 goes into your analysis. This morning I want to start talking

11 about the actual numbers in this case if we can. Let's begin

12 with talking about your outputs. You prepared documents for

13 the analysis of the finances in the case?

14 A. Yes, I have.

10:21:54 15 Q. Okay. These documents, let me show you the first schedule

16 and ask you if you recognize this document.

17 A. Yes, I recognize this document.

18 Q. Now, is this the cover page of your spread sheet that

19 covers all the transactions in the case?

10:22:23 20 A. Yes, the first page.

21 Q. Let's first start talking about the coding so when the jury

22 is looking at this they can understand what they're seeing.

23 Starting with the upper box on the left, that's just providing

24 case information?

10:22:39 25 A. Case information, the filing date and discharge date.

## <u>CERTIFICATE OF SERVICE</u>

I, Simon Fleischmann, an attorney, certify that I caused the foregoing motion to be served upon all persons and entities authorized and registered to receive such service through the Court's Case Management/Electronic Case Files (CM/ECF) system on July 23, 2018.


_____ /s/Simon Fleischmann _____